COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| ARMANDO MADRID, | | No. 08-07-00128-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 109th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Andrews County, Texas |
| | § | |
| Appellee. | | (TC # 4716) |
| | § | |

**O P I N I O N**

Armando Madrid appeals his conviction of sexual assault of a child, enhanced by two prior felony convictions. A jury found Appellant guilty, found both enhancement paragraphs true and assessed his at imprisonment for twenty-five years. Finding no error, we affirm.

**FACTUAL SUMMARY**

In 2005, sixteen-year-old ME89[1] lived with her family in Andrews, Texas. She knew fifty-three-year-old Appellant because he was a friend of the family. On July 2, 2005, ME89 was home alone because her mother and siblings were out of town. Appellant came to the residence and ME89 told him that her mother was not there. ME89 went with Appellant to a store where he purchased potato chips and soft drinks and they returned to the house. Once back at the house, Appellant asked ME89 if she wanted to smoke some cocaine with him. ME89, who had used cocaine before, agreed and they used cocaine there at her house. Later, they left her house to get more cocaine and went to a motel in Andrews to "do drugs." ME89 recalled that they sat around, talked and "kept doing

_____

[1] The child victim was identified in the proceedings below by the pseudonym ME89.

drugs." Appellant was also drinking. Appellant asked ME89 if she would "make love to him" but she refused. He asked her more than once and each time she refused. When they ran out of cocaine, they went to his mother's house and got more. Back at motel, ME89 went into the restroom. When she came out, Appellant was in his underwear. He pushed her onto the bed and got on top of her. He began touching her breasts with his hands and he touched her vagina with his fingers. ME89 told him to get off of her but he did not say anything and instead removed her pants. When the prosecutor asked ME89 what Appellant did next, the court reporter apparently did not hear what the witness stated because the record states: "He just (unclear) - ." ME89 continued to describe what happened next, stating that "I was just trying to push him off, trying to push him away and then finally he stopped." Appellant fell asleep and slept through the night but ME89 could not sleep. At one point during this incident, ME89 told Appellant that she was only sixteen but he replied that it did not matter and nobody had to know about it. She woke him up the next morning and told him to take her home. Appellant offered ME89 $100 if she would not tell anyone what had happened.

The following day, Andrews County Deputy Sheriff Prentiss Hill was dispatched to the Sheriff's Office at about 11 p.m. to speak with a person about a sexual assault of a child. He spoke with ME89's mother who was visibly upset, crying, and confused. Based on his conversation with her, Deputy Hill went to ME89's home to speak with her. ME89 was on her bed crying. Based on ME89's statements to him about what had happened, he determined that she had not washed the clothes she had been wearing at the time of the assault and he collected the clothing as evidence. A blood sample was subsequently taken from Appellant and submitted, along with ME89's clothing, to the D.E.A. Crime Lab in Lubbock for analysis. A semen stain was found on the ME89's panties. DNA analysis revealed that to a reasonable degree of scientific certainty, Appellant was the source of the DNA profile found in the sperm fraction of the semen stain. ME89's DNA was also found

on the underwear.

Appellant testified at trial that he had been in a relationship with ME89's mother but it had ended on Friday, just prior to these allegations being made against him.[2] He and ME89's mother had sex on Friday but they got into an argument and she threatened to pay him back. Although Appellant lived with his mother, he had gotten the motel room because his mother had guests at her home and there was not enough room for all of them. Appellant admitted giving ME89 a ride to her boyfriend's house and to the store so she could use the telephone. However, he denied giving ME89 any cocaine, having her in his motel room, or having sex with her.

ME89's boyfriend, Michael Jimenez, testified for the defense that he was with ME89 on the evening of July 2, but he admitted he was not with her all night. The defense attempted to establish ME89's reputation for truthfulness but Jimenez denied being familiar with her reputation in the community. During cross-examination, Jimenez testified that ME89 came to him the next day and "told [him] everything, what had happened." The prosecutor asked Jimenez whether ME89 told him that Appellant raped her, and he replied in the affirmative. On re-direct, defense counsel asked Jimenez whether he believed her and Jimenez replied, "I didn't know what to believe at the time."

The indictment alleged that Appellant intentionally and knowingly caused his sexual organ to penetrate the sexual organ of ME89. The jury rejected Appellant's defense and found him guilty of sexual assault of a child as alleged in the indictment. Appellant entered a plea of true to both enhancement paragraphs and the jury assessed his punishment at imprisonment for a term of twenty-five years.

## LEGAL SUFFICIENCY OF THE EVIDENCE

In Issue One, Appellant asserts that the evidence is legally insufficient to support his

---

[2] July 2, 2005 was a Saturday.

conviction because there is no evidence of penetration.  The State has not filed a reply brief.[3]

*Standard of Review*

The United States Supreme Court set the standard for reviewing legal sufficiency of the evidence in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).  We examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Dewberry*, 4 S.W.3d at 740, *citing Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781; *Arnold v. State*, 873 S.W.2d 27, 30 (Tex.Crim.App. 1993).  In conducting this review, we are required to evaluate all of the evidence in the record, both direct and circumstantial.  *Dewberry*, 4 S.W.3d at 740.  Further, our consideration of all of the evidence admitted at trial includes both admissible and inadmissible evidence.  *Id.*; *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988); *Gardner v. State*, 699 S.W.2d 831, 835 (Tex.Crim.App. 1985).  Because our role is not to become a thirteenth juror, this Court may not re-evaluate the weight and credibility of the evidence and thereby substitute our judgment for that of the fact-finder.  *Dewberry*, 4 S.W.3d at 740; *Johnson*, 967 S.W.2d at 412; *Wilson v. State*, 863 S.W.2d 59, 65 (Tex.Crim.App. 1993).

*Sexual Assault of a Child*

A person commits an offense if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means.  TEX.PENAL CODE ANN. § 22.011(a)(2)(A)(Vernon

---

[3] It is unclear why the State has not filed a brief in this case but we note that the Andrews County Attorney has not filed a brief in other pending appeals.  Our rules of appellate procedure do not require the appellee in civil or criminal appeals to file a brief.  Further, the State does not have the burden on appeal to establish why the judgment of conviction should not be reversed.  We therefore do not hold the prosecutor's failure to file a brief against the State and we must review the issues presented on appeal by the appropriate standards of review.  Nevertheless, the prosecutor's failure to file a brief deprives the Court of the State's point of view on the issues presented.

Supp. 2007). The indictment alleged, in relevant part, that Appellant intentionally or knowingly caused the penetration of the sexual organ of ME89, a child younger than seventeen years of age, by the defendant's sexual organ. The application paragraph of the court's charge tracked the language of the indictment.

In a prosecution for sexual assault, penetration may be proven by circumstantial evidence. *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex.Crim.App. 1972). Further, there is no requirement that the complainant testify. *Id.* at 596. However, a child victim's testimony alone is sufficient evidence of penetration. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex.Crim.App. 1978). Penetration, within the meaning of Sections 22.011 or 22.021 of the Texas Penal Code, occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App. 1992). Penetration of the vaginal canal is not required to prove penetration under the statute. *Id*. Evidence of the slightest penetration is sufficient. *Id.* "Female sexual organ" is a more general term than "vagina" and refers to the entire female genitalia, including both vagina and the vulva. *Aylor v. State*, 727 S.W.2d 727, 729-30 (Tex.App.--Austin 1987, pet. ref'd).

*Review of the Evidence*

Appellant is correct that the record does not reflect that ME89 testified Appellant penetrated her sexual organ with his penis. Unfortunately, the court reporter did not record a critical part of the complainant's testimony or call to the attention of the trial court and the parties that she could not understand or hear the witness. That does not end our inquiry because there is other evidence relevant to the penetration element. Defense counsel showed the complainant the police report made in the case and asked her to read a portion of it aloud in an apparent effort to impeach a portion of her testimony. She began coughing and apparently could not continue, so he stated the following:

[Defense counsel]: Okay. So if the Police Report say [sic] that, this is the Police Report that they wrote, that *when the sexual act was complete*, then you were returned home, the victim advised that she had told her boyfriend about this, Michael Fernandez.[4] And you just told this jury you don't know a Michael Fernandez. My question to you then is, why did you tell the police you knew Michael Fernandez? [Emphasis added.]

Thus, defense counsel informed the jury that ME89 made a statement to the police that Appellant returned her home after the "sexual act was complete" and she told her boyfriend about the assault. Further, during cross-examination of Michael Jimenez, the prosecutor established that ME89 told him that she had been "raped" by Appellant. Rape is a term which is commonly understood to mean the forcible penetration of the female sexual organ by a male's sexual organ. Other evidence showed that Appellant's DNA was extracted from a semen stain found on the underwear ME89 had been wearing at the time of the assault.

Appellant does not any address any of the foregoing evidence in the portion of his brief addressing sufficiency of the evidence. ME89's statements to the police and to her boyfriend are hearsay[5] but Appellant introduced one statement into evidence and did not object to the other. Hearsay admitted without objection shall not be denied probative value merely because it is hearsay. TEX.R.EVID. 802. Further, "once the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding process, an appellate court cannot deny that evidence probative value or ignore it in its review of the sufficiency of the evidence." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005).

Taking the foregoing evidence in the light most favorable to the verdict, we find the evidence

---

[4] The deputy sheriff who took the initial report admitted that he misunderstood the boyfriend's name and thought it was Fernandez rather than Jimenez.

[5] Given ME89's mental and emotional state when she was interviewed by the deputy sheriff, the statement contained in the police report might have been admissible as an excited utterance. TEX.R.EVID. 803(2).

legally sufficient to establish beyond a reasonable doubt that Appellant caused the penetration of ME89's sexual organ with his sexual organ. Issue One is overruled.

**EXTRANEOUS OFFENSE**

In Issue Two, Appellant contends that the trial court abused its discretion by admitting extraneous offense evidence that he used cocaine at the time of the offense because it was not disclosed prior to trial and it was more prejudicial than probative. The State asserted at trial that the evidence was admissible as same transaction contextual evidence.

We review the trial court's admission of extraneous-offense evidence for abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). Rule 404(b) allows admission of extraneous evidence "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." TEX.R.EVID. 404(b). Extraneous offenses may be admissible as same transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Prible v. State*, 175 S.W.3d 724, 731-32 (Tex.Crim.App. 2005), *cert. denied*, 546 U.S. 962, 126 S.Ct. 481, 163 L.Ed.2d 367 (2005), *quoting Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete. *Prible*, 175 S.W.3d at 732. Under such circumstances, the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum. *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim.App. 1986). The State is not required to give notice of its intent to introduce same transaction contextual evidence. *See* TEX.R.EVID. 404(b)(upon timely request, State is required to give notice of its intent to introduce during its case-in-chief,

extraneous offense evidence other than that arising in the same transaction).

The evidence showing Appellant and the complainant used cocaine together is intertwined with the evidence of the assaultive conduct and it would have been impractical to describe the events of that day without relating the cocaine use. Further, the evidence illuminates the nature of the crime and helped explain why the complainant went to the motel room with Appellant. The trial court did not abuse its discretion by finding the evidence admissible as same transaction contextual evidence. Further, Appellant was not entitled to notice.

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403. A Rule 403 analysis by the trial court should include, but is not limited to, the following considerations: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004). Although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction. *Mann v. State*, 718 S.W.2d 741, 744 (Tex.Crim.App. 1986). *Swarb v. State*, 125 S.W.3d 672, 681 (Tex.App.--Houston [1st Dist.] 2003, pet. dism'd). We've already held that State had a need to introduce this evidence. The record does not show that the evidence of Appellant's cocaine usage had the potential to impress the jury in some irrational, indelible way. Further, any prejudice suffered by Appellant was to some degree counterbalanced by the complainant's drug usage and her admission she had used it before. We find that the trial court did not abuse its discretion by overruling the Rule 403 objection because the record does not establish

that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.  Issue Two is overruled.  We affirm the judgment of the trial court.

July 31, 2008

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)